**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| EMD CROP BIOSCIENCE INC., and EMD CROP BIOSCIENCE CANADA INC., Plaintiffs, | : | |
| v. | : | Case No. 10-CV-00283-SLC |
| BECKER UNDERWOOD, INC., Defendant. | : | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Plaintiffs Have Standing to Sue for Patent Infringement of the '664 Patent .......... 1

1. Plaintiffs Pled That EMD Crop Bioscience Canada is the Co-Owner of the '664 Patent with McGill University and is the Exclusive Licensee of McGill's Interest .......... 2

2. Defendant's Motion is Premature Without Discovery .......... 3

B. EMD Has Standing to Bring a False-Marking Action .......... 7

C. EMD's False Marking Pleading Meets the Pleading Requirements under Fed. R. Civ. P. 9(b) .......... 9

III. CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Cases**

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009) ........................ 7
*Balsam Coffee Solutions, Inc. v. Folgers Coffee Co.*,
No. 6:09-cv-89, 2009 U.S. Dist. LEXIS 95860 (E.D. Tex. Oct. 14, 2009) .................... 4
*Clontech Labs. Inc. v. Invitrogen Corp*., 406 F.3d 1347 (Fed. Cir. 2005). .......................... 9
*Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998) .................. 6
*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009).................. 10, 11
*Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009)........................... 9, 11
*Hinrichs v. Speaker of the House of Representatives*,
506 F.3d 584 (7th Cir. 2007) ........................................................................................ 7
*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
248 F.3d 1333(Fed. Cir. 2001) ...................................................................................... 2
*Israel Bio-Engineering Project v. Amgen, Inc.*,
475 F.3d 1256 (Fed. Cir. 2007), .............................................................................. 4, 5, 6
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)........................................................ 7
*Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008).................................. 6
*Morrow v. Microsoft Corp*., 499 F.3d 1332 (Fed. Cir. 2007) .................................... 1, 2, 6
*Pequignot v. Solo Cup Co*., 640 F. Supp. 2d 714 (E.D. Va. 2009),
aff'd in part and vacated in part, 2010 U.S. App. LEXIS 11820
(Fed. Cir. June 10, 2010). ............................................................................................... 8
*Propat Int'l Corp. v. RPost US, Inc.*, 473 F.3d 1187 (Fed. Cir. 2007) .............................. 6
*Sicom Sys. v. Agilent Techs., Inc.*, 427 F.3d 971 (Fed. Cir. 2005)...................................... 6
*Simonian v. Cisco Systems, Inc.*,
No. 10c1306, 2010 U.S. Dist. LEXIS 60752 (N.D. Ill. June 17, 2010) ........................ 11
*Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000) .................................... 5, 6
*Stauffer v. Brooks Bros., Inc.*, 615 F. Supp. 2d 248 (S.D.N.Y. 2009) ................................ 8
*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
944 F.2d 870 (Fed. Cir. 1991) ........................................................................................ 2
*Vermont Agency of Natural Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000)................................................................................................... 7, 8
*Waterman v. Mackenzie*, 138 U.S. 252 (1891) .................................................................. 2

**Statutes**

35 U.S.C. § 261 ................................................................................................................ 4
35 U.S.C. § 292 ........................................................................................................ 1, 7, 10

**Rules**

Fed. R. Civ. P. 8(a)............................................................................................................ 5
Fed. R. Civ. P. 9(b) ....................................................................................................... 9, 11

## I. INTRODUCTION

Defendant's motion to dismiss is factually and legally deficient and should be denied. Plaintiffs have standing to bring this suit for patent infringement and false patent marking.

Plaintiffs have sufficiently pled that EMD Crop Bioscience Canada Inc. ("EMD Canada") is a co-owner of U.S. Patent No. 6,797,664 ("the '664 Patent") along with McGill University. Plaintiffs have also pled that McGill University has granted them an exclusive license under the '664 Patent. Nothing more is required at this time. Defendant's motion is untimely and uninformed, having been made before discovery has even begun. Nonetheless, and in a showing of good faith, Plaintiffs provided Defendant's counsel with (1) documents evidencing ownership of the '664 Patent, and (2) the McGill license under the protection of a mutual Confidentiality Agreement.

Plaintiffs have also pled sufficient facts and allegations to support their claim for false patent marking under 35 U.S.C. § 292. Plaintiffs have pled that they are competitors of Becker Underwood and thus are implicitly harmed by Defendant's false patent marking on its Vault HP® product. Nevertheless, Section 292 is a *qui tam* action and courts have held that injury in fact to the United States is sufficient to confer standing in a *qui tam* action. Plaintiffs are entitled to take discovery on their claim in support of their allegations.

## II. ARGUMENT

### A. Plaintiffs Have Standing to Sue for Patent Infringement of the '664 Patent

The party holding the exclusionary right to a patent suffers the legal injury and has constitutional standing to sue. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed.

Cir. 2007). The Federal Circuit has held that plaintiffs in patent suits can be owners suing in their own name or parties suing with patent owners joining in the suit. Additionally, the Federal Circuit has stated that patentees and assignees who hold 'all substantial rights' to the patent fall into the first category of plaintiffs and have standing to bring the suit in their own name. *See id.* at 1339-1341 ("When a party holds all rights or all substantial rights, it alone has standing to sue for infringement."). At times, a patentee may be added to a suit brought by an exclusive licensee to satisfy prudential concerns, not a constitutional standing requirement. *Id.* at 1341 (citing *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1347 (Fed. Cir. 2001)).

The inquiry into whether a licensee possesses "all substantial rights" in the patent is fact intensive. In *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, the Federal Circuit stated that, "[i]t is well settled that, 'whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.'" 944 F.2d 870, 875 (Fed. Cir. 1991) (quoting *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891)). In finding that the license at issue conveyed all substantial rights, the court looked to the rights retained by the licensor and found that the district court properly held that none of the reserved rights by the licensor were so substantial as to reduce the transfer to a license. *Vaupel,* 944 F.3d 870. The insufficient rights retained included the veto right on sublicensing by the licensee, right to foreign prosecution, reversionary right in event of bankruptcy or termination and right to receive infringement damages. *Id.* at 875.

**1. Plaintiffs Pled That EMD Crop Bioscience Canada is the Co-Owner of the '664 Patent with McGill University and is the Exclusive Licensee of McGill's Interest**

Plaintiffs have pled that EMD Canada and McGill University are co-owners of the

'664 Patent. *See* Complaint, ¶ 9 ("EMD Crop Bioscience Canada and McGill University are the owners of all right, title, and interest in and to U.S. Patent No. 6,979,664 ("the '664 Patent") entitled "Composition for Accelerating Seed Germination and Plant Growth."). Plaintiffs have also pled that "EMD is the exclusive licensee of McGill University's rights under the '664 Patent." *See* Complaint, ¶ 10. On a motion to dismiss, all allegations in the complaint must be accepted as true and all inferences must be drawn in favor of Plaintiffs. Accordingly, Plaintiffs' allegations concerning the ownership of the '664 Patent and the license to this patent require that Becker Underwood's motion be denied. Had Becker Underwood waited for the discovery period, it would have seen the terms of the exclusive license granted by McGill University, as well as the relationship of EMD Canada and EMD Crop Bioscience, Inc. ("EMD U.S."), all of which support the sufficiency of Plaintiffs' pleading. Becker Underwood's motion was made without the benefit of facts and is, at best, premature.

**2. Defendant's Motion is Premature Without Discovery**

Defendant's standing argument provides three reasons for dismissal, all of which are premature and inconsistent with the case law cited in support. Defendant first states that Plaintiffs lack standing because they have failed to name the two "apparent" co-owners of the '664 Patent in the complaint. *See* Def. Memo. p.7. Becker Underwood ignores that Plaintiffs have pled that EMD Canada is a co-owner of the '664 Patent with McGill University in paragraph 9 of the complaint and instead, without having conducted any discovery, relies upon the assignment documents on record with the United States Patent and Trademark Office. The assignment records in the U.S. Patent and Trademark Office ("PTO") provide notice, but do not establish ownership. *See Balsam Coffee Solutions, Inc. v. Folgers Coffee Co.*, No. 6:09-cv-89, 2009 U.S. Dist. LEXIS 95860 *9

(E.D. Tex. Oct. 14, 2009) (while addressing a different issue than the present case, the court recognized that "[w]hether an assignment is recorded with the USPTO may be relevant to a party's rights against any subsequent *bona fide* purchaser, but is irrelevant to a determination of ownership or standing") (citing 35 U.S.C. § 261). Defendant's motion to dismiss only references the PTO assignment records. Defendant did not address any of the current documents that support Plaintiffs' pleadings.

Defendant's reliance on *Israel Bio-Engineering Project v. Amgen, Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007), is misplaced. First and most importantly, the parties in *Israel Bio-Engineering* had facts and relevant documents before them regarding ownership before a motion was made to the court. *Id.* at 1258-1261 (discussing the four contracts at issue between the co-owners). Defendant in the present case had not reviewed any of Plaintiffs' facts or documents. Instead, Defendant relied solely upon the assignment records of the PTO without any discovery having taken place. Defendant's assertion that Bios Agriculture, Inc. is currently a co-owner will be proven wrong and frivolous when the appropriate documents are reviewed by Defendant's counsel. The court in *Israel Bio-Engineering* addressed standing with facts much different and more developed than those of the present case. *See id.* In *Israel Bio-Engineering*, there were multiple co-owners to specific claims in the asserted patent, and one co-owner was bringing suit without joining the other co-owners. *Id.* The non-joining co-owners did not agree to the litigation. *Id.* One co-owner even argued that the other co-owner was contractually obligated to assign the patent rights. *Id.* In *Israel Bio-Engineering*, there was no mention of a co-owner being exclusively licensed to the other co-owner's interest, as pled by Plaintiffs in their complaint in the present case.

Becker Underwood's remaining arguments focus on the exclusive license with

McGill University. Defendant's second argument is that Plaintiffs lack standing because nothing in the complaint suggests that EMD has obtained "all substantial rights" in the '664 Patent through agreement with the owners. *See* Def. Memo., p.8. For its third argument, Becker Underwood takes the position that because there can not be two exclusive licensees the complaint is fatally deficient. *See* Def. Memo., p.8. Defendant also argues that Plaintiffs need to prove ownership by attaching written license agreements to the complaint to prove that Plaintiffs have "all substantial rights" in the '664 Patent. *Speedplay, Inc. v. Bebop, Inc.,* 211 F.3d 1245 (Fed. Cir. 2000).

Becker Underwood's questions regarding whether McGill University's exclusive license transferred all substantial rights and whether McGill University is required to be named as a plaintiff are questions for discovery, not a motion to dismiss before discovery has begun. Plaintiffs have pled ownership and that an exclusive license was granted. This is sufficient under the notice pleading requirements of Fed. R. Civ. P. 8(a) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"). Nothing in *Speedplay* supports Defendant's arguments that a license agreement must be attached to the complaint.

*Speedplay* supports Plaintiffs' position that Becker Underwood's motion is at best premature. In *Speedplay,* ownership was challenged through a motion in limine before trial, after discovery occurred, and almost 2 ½ years after the complaint was filed. *See Bebop Motion in Limine,* attached as Exhibit 1. The *Speedplay* defendant supported its motion in limine with evidence of multiple document requests seeking evidence of ownership. *See id.* The plaintiff objected to these requests and did not produce evidence regarding ownership even after a deposition transcript of the inventor indicated that he believed there was an agreement. *See id.* at 4-10. Unlike in *Speedplay,* there has been no

discovery in the present case and Plaintiffs have not refused to produce requested documents. In contrast, Plaintiffs provided copies of documents to Defendant's counsel in advance of discovery. *Speedplay* provides no support for Becker Underwood's contention that Plaintiffs need to *prove* ownership at this stage in the litigation, beyond its allegations in the complaint. There is also no support for the position that Plaintiffs are required to attach a copy of license agreements to their pleading.

None of the cases cited in Defendant's brief required the plaintiffs in those cases to attach non-public and confidential ownership documents to the pleadings:

- *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008) (infringement action pending fifteen years where standing was addressed in damages stage of litigation).
- *Israel Bio-Engineering Project v. Amgen, Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007) (standing addressed after summary judgment motions with supporting papers filed with the court, and was not based on the pleadings alone).
- *Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007) (standing addressed in motion for summary judgment based on a joint bankruptcy liquidation plan that was of public record).
- *Propat Int'l Corp. v. RPost US, Inc.*, 473 F.3d 1187 (Fed. Cir. 2007) (standing addressed in summary judgment motion raised over 3 ½ years after filing of complaint).
- *Sicom Sys. v. Agilent Techs., Inc.*, 427 F.3d 971 (Fed. Cir. 2005) (district court granted motion to dismiss after seven months of discovery had taken place) (*see* attached Exhibit 2 (docket sheet)).
- *Speedplay, Inv. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000) (noting that district court addressed ownership and standing in a motion in limine prior to trial and after discovery).
- *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998) (motion to dismiss was filed eight years after complaint was filed).
- *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009) (non-patent case where defendant submitted in support of its motion a letter by plaintiff assigning accounts payable to third party).
- *Hinrichs v. Speaker of the House of Representatives*, 506 F.3d 584 (7th Cir. 2007) (discussing standing in context of taxpayer standing).

Plaintiffs have sufficiently pled that EMD Canada is a co-owner of the '664 Patent with McGill University and that McGill granted an exclusive license. This is more than sufficient for the pleading stage. Becker Underwood will have the opportunity to review documents under the protection of a protective order during discovery to confirm the sufficiency of Plaintiffs' allegations.

**B. EMD Has Standing to Bring a False-Marking Action**

False Marking under 35 U.S.C. § 292 is a *qui tam* action that authorizes an individual to sue on behalf of the government. Courts have therefore held that a party will have standing to sue under this action when the United States suffers an injury because the false marking statute has been violated. *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000) (finding that "the United States' injury in fact suffices to confer standing on respondent Stevens"). All plaintiffs pursuing a *qui tam* action must still meet the constitutional standing requirements that (1) there is an injury in fact, (2) injury is fairly traceable to conduct of the defendant, and (3) redressability. *See id.* at 773 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (setting forth the three constitutional standing requirements).

Plaintiffs' complaint meets these standing requirements. Plaintiffs have pled an injury. Plaintiffs pled that the false marking has the potential to discourage or deter others from commercializing a competing product. *See Complaint*, ¶ 34. Plaintiffs have also implicitly pled an injury due to the parties' status as competitors. Plaintiffs have pled that they offer a product for soybeans containing LCO Promoter Technology. *See Complaint*, ¶ 8. Plaintiffs have pled that Defendant's VAULT HP® product for soybeans states on its packaging that the product is protected by two expired patents. *See Complaint*, ¶ 16.

Defendant relies on *Stauffer v. Brooks Bros., Inc.*, 615 F. Supp. 2d 248, 254 (S.D.N.Y. 2009), Federal Circuit Appeal pending Nos. 2009-1428, 2009-1430, and 2009-1453, in support of dismissal of this *qui tam* complaint for failure to establish standing. In *Stauffer*, the plaintiff was a part of the rash of *qui tam* actions filed in the past two years by *individuals* alleging injury. In *Stauffer*, the *pro se* plaintiff was a patent attorney who alleged injury based on the defendant's sale of a bow tie that was marked with expired patents. *Id.* The defendant in *Stauffer*, as well as its competitors, had been marking bow ties for years and continued to mark them even after the patents expired in the 1950s. *Id.* at 251. The facts of *Stauffer* differ from those of the present case where the party alleging false marking is a competitor. In addition, unlike the bow ties of *Stauffer*, Becker Underwood's VAULT HP® product is new, having only recently been introduced to the market. From day one, it was falsely marked with not one, but two expired patents. It was not a legacy product with a patent marking, as in *Stauffer*.

With an appeal pending, the ultimate fate of *Stauffer* is unknown. The Supreme Court has held, however, that even in the circumstance when an individual plaintiff does not otherwise have standing, injury to the United States is sufficient to confer standing. *See Vermont Agency*, 529 U.S. at 773 (finding that "the United States' injury in fact suffices to confer standing on respondent Stevens"); *see also Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714, 724 (E.D. Va. 2009) ("Together with the overwhelming authority explicitly describing § 292(b) as a *qui tam* statute, these factors are more than sufficient to conclude that § 292(b) is indeed a *qui tam* statute, and therefore, that Pequignot has Article III standing, as a partial assignee of the government's claims, to sue Solo for violations of § 292."), *aff'd in part and vacated in part*, 2010 U.S. App. LEXIS 11820 (Fed. Cir. June 10, 2010).

Plaintiffs, as competitors of Becker Underwood, have implicitly pled injury in addition to the United States suffering an injury in fact. Accordingly, Plaintiffs have standing to bring a claim for false marking.

### C. Plaintiffs' False Marking Pleading Meets the Pleading Requirements under Fed. R. Civ. P. 9(b)

Rule 9(b) states that a party, "must state with particularity the circumstances constituting fraud or mistake." False marking is an actionable claim when an unpatented article is marked and there is an "intent to deceive." *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009). "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." *Clontech Labs. Inc. v. Invitrogen Corp*., 406 F.3d 1347, 1352 (Fed. Cir. 2005). "A party asserting false marking must show by a preponderance of the evidence that the accused party did not have a reasonable belief that the articles were properly marked." *Forest*, 590 F.3d at 1300. Although Rule 9(b) requires that fraud be alleged with particularity, it also provides that "**intent,** knowledge and other conditions of a person's mind may be alleged **generally.**" Fed. R. Civ. P. 9(b) (emphasis added).

Plaintiffs' allegations meet the requirements of Rule 9(b). Plaintiffs pled that Becker Underwood's VAULT HP® product is marked with two expired patents. *See Complaint*, ¶ 16. Plaintiffs pled who, when, and where the misrepresentation was made: Becker Underwood's product indicates that the product packaging material was revised on November 2009. *See Complaint*, ¶ 17. Plaintiffs also pled that Becker Underwood began commercially shipping its falsely marked VAULT HP® product in Spring 2010. *See Complaint*, ¶ 22. Thus, Plaintiffs have pled when and where the misrepresentations

were made and who made them. Although the names of the individuals who made the misrepresentation are unknown to Plaintiffs, their identity—the individuals who drafted and revised the November 2009 product literature—can be readily determined by Becker Underwood.

Plaintiffs, relying on Rule 9(b), pled the intent element generally with sufficient facts to support intent. Plaintiffs pled that "upon information and belief" Becker Underwood knew or reasonably should have known that one or more of these patents marked on the VAULT HP® product was expired despite the requirements of 35 U.S.C. § 292. *See Complaint*, ¶¶ 31 - 32. Plaintiffs pled that "upon information and belief" Becker Underwood marked its product for the purpose of deceiving the public and that this false marking has the potential to discourage or deter others from commercializing a competing product. *See Complaint*, ¶¶ 33 - 34. These allegations support an intent to deceive because the Defendant revised its product literature before it launched a new product, yet failed to remove expired patents from this literature.

Defendant relies upon *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) to argue that the plaintiff must identify the "specific who, what, when, where, and how of the misrepresentation." *See* Def. Memo., p.14. The court went on to state that "although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information …and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-1329. *Exergen* addressed a heightened pleading standard, but did so in the context of inequitable conduct where the plaintiff failed to even plead the claims to which the withheld

references were relevant, and the reasons that the references were not cumulative. *Id.* at 1329-1330. The present issue is false marking, not inequitable conduct.

Defendant also relies on the non-binding, and factually distinct case of *Simonian v. Cisco Systems, Inc.*, No. 10c1306, 2010 U.S. Dist. LEXIS 60752 (N.D. Ill. June 17, 2010). The *Simonian* case is one of at least thirty-nine cases filed by the same plaintiff against large corporations in the wake of the holding in *Forest Group.* The plaintiff in *Simonian* filed *qui tam* actions attempting to capitalize on the amount of damages per falsely marked article. Although the court granted a motion to dismiss and found that the pleadings did not meet the heightened pleading standard, the court stated that if the plaintiff can cure the deficiency in his complaint he may seek leave to amend. *Simonian*, 2010 U.S. Dist. LEXIS 60752, at *12.

In the event the Court finds that Plaintiffs have not met the pleading standard of Rule 9(b), Plaintiffs request leave to amend. *See id.*

## III. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the court deny Defendant's motion to dismiss.

Date: July 27, 2010.

Respectfully submitted,

*s/ Bryan J. Cahill*
James D. Peterson
State Bar No. 1022819
Bryan J. Cahill
State Bar No. 1055439
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Post Office Box 2719
Madison, WI 53701-2719
Phone: 608-257-3911
Fax: 608-257-0609
Email: jpeterson@gklaw.com

                        bcahill@gklaw.com

Benjamin E. Leace
Lauren Schmidt
RATNERPRESTIA
1235 Westlakes Drive, Suite 301
Berwyn, PA 19312
Phone: (610) 407-0700
Fax: (610) 407-0701
Email: beleace@ratnerprestia.com
lschmidt@ratnerprestia.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2010, I caused these documents to be electronically filed with the Clerk of Court using the ECF system, which will make these documents available to all counsel of record for viewing and downloading from the ECF system.

- Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim and accompanying exhibits.

*s/ Bryan J. Cahill*
Bryan J. Cahill

5234373_1